# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 8318 | **DATE** | 8/15/2001 |
| **CASE TITLE** | Joseph DeMauro vs. Betty Loren-Maltese, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 9/13/2001 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for judgment on administrative review act claim [37] is denied. A status hearing is ordered for September 13, 2001 at 9:30 A.M.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| ✓ | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

courtroom deputy's initials

Date/time received in central Clerk's Office

AUG 17 2001 date docketed

FILED FOR DOCKETING
01 AUG 17 AM 8: 32

Document Number: 40

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH DeMAURO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 98 C 8318 |
| v. | ) | |
| | ) | |
| BETTY LOREN-MALTESE, TOWN OF CICERO; et al., | ) | Judge Joan B. Gottschall |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Joseph DeMauro, has filed a four-count complaint against Betty Loren-Maltese, the Town of Cicero ("the Town"), Louis Guido, Merrick Scott Rayle, Leonard Rutka, and the Town of Cicero Board of Fire, Police and Public Safety Commissioners ("the Board"). DeMauro, a former member of the Town's police department, alleges that defendants suspended and discharged him in retaliation for his political opposition to Loren-Maltese in violation of his right to free speech under the First Amendment and due process under the Fourteenth Amendment. DeMauro also alleges that the Town's decision was part of a broader conspiracy to purge the police department of Loren-Maltese's political opponents. Now, DeMauro moves for an entry of judgment on Count 4, brought under the Illinois Administrative Review Act, 735 ILCS 5/3-103. Count 4 requests a reversal of the Board's decisions to discharge DeMauro and deny him back pay for a portion of the time that he was suspended without pay. Defendants oppose DeMauro's motion. For the reasons set forth below, DeMauro's motion is denied.

## Background

DeMauro is a former Public Safety Officer with the Town of Cicero Police Department.

The Town suspended DeMauro on May 19, 1997, with pay, for failing to obtain Firefighter II Certification, a credential that the Town asserts, and DeMauro disputes, that DeMauro was required to possess in order to be an officer. At the time of his suspension, DeMauro had been with the police department for approximately three years.

The Town filed charges with the Board, requesting DeMauro's dismissal for failure to obtain the certification mentioned above. The first hearing date was scheduled for July 15, 1997. After multiple continuances requested by DeMauro, the last of which occurred on August 5, 1997, the parties did not appear before the Town's Board until October 14, 1997. In the meantime, the Town had stopped paying DeMauro as of August 1, 1997.

On November 10, 1997, the Town amended its charges by adding two more counts to its complaint against DeMauro. Count 2 of the amended complaint alleged a violation of the Town's residency ordinance, while Count 3 claimed a violation of Rule 26 of the Rules of Conduct for the police department ("Rule 26"). Rule 26 prohibits "[t]estifying, making reports or conducting police business in a less than truthful and/or cooperative manner." (Record of Admin Proc., Vol. 1 ("Rec1") at CIC 0118.)

The Town subsequently withdrew Counts 1 and 2, and proceeded against DeMauro only on Count 3, the Rule 26 charge. The evidentiary hearing in this matter occurred on June 30, 1998. Only two witnesses provided testimony at the hearing: DeMauro and Deputy Superintendent Leonard Rutka. Rutka testified that on the morning of October 27, 1997, he received a phone call from DeMauro, in which DeMauro (then on suspension) said that he was at the Daley Center; that he had just left state court; and that a judge told him that he was reinstated and should report to work. Rutka testified that he thought that DeMauro was serious, and that he had subsequently informed Betty Loren-Maltese, the Town President, about his conversation

with DeMauro.

Later on the morning of October 27, Rutka testified, he called DeMauro and left a message telling him to call back. DeMauro called back, at which time DeMauro admitted that he had lied about the existence of an order reinstating him to work. DeMauro also apologized for the lie, and according to Rutka, called his actions a "hoax." (Record of Admin Proc., Vol. 2 ("Rec2") at CIC 354.) Furthermore, Rutka testified, DeMauro said that he had called back only at the urging of his attorney. In his testimony, DeMauro confirmed Rutka's account and admitted that he had not been at the Daley Center; he had not seen a state court judge; and that he had not received an order reinstating him to work. There is no evidence to dispute that DeMauro had returned Rutka's call only at the urging of his attorney.

On November 24, 1998, the Board announced that it had found DeMauro's conduct to be in violation of Rule 26, and that this violation was cause for discharge. In formulating its decision, the Board said that it gave "careful consideration to the following points:"

> (i) the subject matter of the fabrication is serious – [DeMauro] was not making up a story about where he was on his lunch hour (as in one of the cases cited by his attorney) – but rather was falsely representing to his superior the nature of a non-existent Court Order of the Circuit Court of Cook County;
> (ii) [DeMauro] was falsely saying that he was at the Daley Center where such an Order had been entered directing that he be reinstated;
> (iii) [DeMauro] rescinded his false story only after being advised by his attorney to call and apologize.

(Mem. Opinion of Bd., Rec2 at CIC 433.) The Board concluded that Rule 26 was violated "because the subject matter of the call did relate to Police Business, i.e., his employment, and that he was making a false report." (*Id.* at ¶ E.) Further, the Board stated that "termination is the appropriate discipline due to the subject matter of the false representation as well as [DeMauro's]

3

admission that he knowingly and willfully made the false report to the Deputy Superintendent."
(*Id.* at ¶ F.)

Following his discharge, DeMauro requested that the Board order the Town to provide DeMauro with back pay from August 1 through December 8, 1997. August 1 was when the Town first stopped paying DeMauro. December 8 was the day before when the Board found probable cause to proceed on Count 3 of the Amended Charges filed by the Town. DeMauro reasons that he should have been paid while he was being suspended for a charge (the failure to obtain Firefighter II certification) that the Town had ultimately withdrawn from consideration by the Board. On February 23, 1999, the Board denied DeMauro's request, stating that (1) it was without authority to award back pay, and (2) it would decline to award back pay because DeMauro had been terminated as a result of the charges brought against him.

Now, DeMauro seeks judicial review of the Board's decisions under the Illinois Administrative Review Act ("ARA"), 735 ILCS 5/3-103. This claim is before the court on the basis of supplemental jurisdiction.

## Analysis

### I. DeMauro's Discharge

Under the ARA, a court reviews a town board's discharge of an employee by employing a two-step process. The court first decides "'whether the [board's] finding of guilt is contrary to the manifest weight of the evidence.'" *Ehlers v. Jackson County Sheriff's Merit Comm'n*, 697 N.E.2d 717, 720 (Ill. 1998) (citations omitted). Then, the court determines whether the board's findings of fact support its conclusion that "cause" existed for discharge. *Id.*

4

*A. Finding of Guilt*

DeMauro makes essentially three arguments for why the Board's findings were contrary to the manifest weight of the evidence: (1) Rutka, the recipient of DeMauro's statement, stated that he did not think that DeMauro's call constituted a police report or testimony, or that DeMauro was on duty or was conducting official police business at the time of the call; (2) DeMauro believed that a police report was something written down; and (3) "Rule 26 is not a blanket prohibition against false statements." (Pl. Mem. in Sup. of Mot. on ARA Claim at 14.) The Town opposes all these arguments.

Under the ARA, the key question is whether the Board's findings are contrary to the manifest weight of the evidence. "The findings of the Board are deemed prima facie true and correct, and a reviewing court will not reweigh the evidence or make an independent determination of the facts." *Merrifield v. Illinois State Police Merit Board*, 691 N.E.2d 191, 198 (Ill.App.Ct. 1998). "A reviewing court is limited to ascertaining whether an opposite conclusion is clearly evident from the record or whether the [board's] findings are unreasonable, arbitrary, and not based upon any of the evidence." *Id.* "If the record contains any competent evidence to support the agency's findings, the decision must be sustained on review." *Id.*

The Board's decision is not contrary to the manifest weight of the evidence. Rule 26 prohibits "[t]estifying, making reports or conducting police business in a less than truthful and/or cooperative manner." (Rec1 at CIC 0118.) The Board found that it was undisputed that DeMauro had called and made a false statement to Rutka. This statement, in the Board's opinion, constituted the making of a report within the meaning of Rule 26. Because the report

5

was false, the Board decided, DeMauro's conduct violated the rule prohibiting reports made in a less than truthful manner.

Rutka's testimony does not contradict the Board's finding of guilt. It is true that Rutka said that he did not believe that DeMauro's call was testimony or an official police report. However, the language of the rule only speaks of a "report," not a "police report," (*Id.*) and although giving false testimony or conducting police business in a less than truthful manner are other ways in which Rule 26 might be violated, those are not the only ways. Giving a false report may violate the rule as well. In any event, the Board concluded that DeMauro's report was given in relation to official police business, namely DeMauro's employment. Therefore, the Board had concluded that DeMauro had provided a false report involving official police business. This court cannot say that the Board's finding of guilt is "unreasonable, arbitrary, and not based upon any of the evidence." *Merrifield*, 691 N.E.2d at 198.

Neither DeMauro's testimony nor his argument about the meaning of Rule 26 alter this conclusion. DeMauro claimed in his testimony that a report is a statement that is written down, not spoken. Further, DeMauro argues that Rule 26 is not a blanket prohibition on all false statements, just a prohibition on false police reports and false official police statements. Problematic for DeMauro is that courts do not interpret the word, report, as narrowly as he does; false *oral* statements are considered false reports, sanctionable by discharge. *See Noro v. Police Bd., City of Chicago*, 365 N.E.2d 419, 423 (Ill.App.Ct. 1977) (holding that officer's false oral report regarding his testimony before a grand jury constituted a false report warranting dismissal); *Thanasouras v. Police Bd., City of Chicago*, 339 N.E.2d 504, *506, cert. denied*, 429 U.S. 851 (1976) (holding that officer's false oral report regarding his testimony before a grand

6

jury constituted a false report warranting dismissal). Additionally, although DeMauro would argue that the Board should have used an interpretation of Rule 26 different from the one it actually used, this court must give considerable deference to the Board's interpretation of its own rules, of which Rule 26 is one. *See Davis v. City of Evanston*, 629 N.E.2d 125, 130 (Ill.App.Ct. 1993) (citations omitted) ("When a court considers agency rules, 'it is of tantamount importance that deference be given an administrative agency's own interpretation' of those rules.") Indeed, the Board considered DeMauro's interpretation of Rule 26 and rejected it, stating that "[t]he Board does not accept the narrow definition of Rule 26 urged by [DeMauro]." (Rec2 at CIC 434.) This court cannot reverse the Board's finding of a violation of Rule 26.

*B. Cause for Discharge*

DeMauro argues that even if a violation of Rule 26 was properly found, the factual findings were not sufficient to support the Board's conclusion that cause existed for discharge. His argument consists of making a series of favorable comparisons with cases in which courts have reversed boards' findings of cause for the discharge of police officers. In opposition to DeMauro's argument, the Town cites its own cases and offers its own analysis of DeMauro's cases.

"Cause," in the context of discharge has been defined as a "substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position." *Ehlers*, 697 N.E.2d at 720; *Kreiser v. Police Bd.*, 370 N.E.2d 511, 513 (Ill. 1977). "A reviewing court shall respect [a board's] finding of cause and shall not overturn [a board's] finding . . . unless that finding is 'arbitrary and unreasonable or unrelated to the requirements of service.'" *Ehlers*, 697 N.E.2d at 720 (citations omitted).

At issue is whether lying to a superior officer merits the severe penalty of discharge. Cases go both ways. Some hold that telling a falsehood does not constitute grounds for

7

discharge. *See Kreiser v. Police Bd. of City of Chicago*, 370 N.E.2d 511, 513 (Ill. 1977) (holding that falsely denying the use of a personal car while on duty was not grounds for dismissal); *Christenson v. Bd. of Fire and Police Comm'rs.*, 404 N.E.2d 339, 342 (Ill.App.Ct. 1980) (holding that falsely denying the use of a police vehicle to travel on personal business outside of city limits was not grounds for discharge); *Humbles v. Bd. of Fire and Police Comm'rs.* 368 N.E.2d 1049, 1050 (Ill.App.Ct. 1977) (holding that falsely saying that one was going to court to testify in a traffic case, rather than in the individual's own divorce case, while on duty, was not grounds for dismissal). Other cases hold the opposite. *See Merrifield*, 691 N.E.2d at 198 (holding that, during an investigation, falsely denying romantic relationship with felon was grounds for dismissal); *Kupkowski v. Bd. of Fire and Police Comm'rs.*, 389 N.E.2d 219, 226 (Ill.App.Ct. 1979) (holding that falsely denying having been in a car accident and having negligently caused property damage, while in squad car, was grounds for dismissal); *Noro*, 365 N.E.2d at 423 (holding that falsely characterizing testimony before grand jury was grounds for dismissal); *Thanasouras*, 339 N.E.2d at 506 (holding that falsely characterizing testimony before grand jury was grounds for dismissal). As the court in *Kupkowski* noted, it appears that the "key factor" that courts use in deciding whether falsehoods are sufficient grounds for dismissal is "the subject matter of the falsehood, more specifically, how it relates to a policeman's duties to the public." 389 N.E.2d at 225. Where an officer lies about attending to personal business while on duty (testifying in divorce case, using a personal car while on duty), courts tend to be lenient. Where an officer, however, lies about a matter related to public duties and police business (lying about causing damage to property, mischaracterizing grand jury testimony) or a matter under investigation (denying a romantic relationship with a felon), courts tend to uphold a board's finding of cause for dismissal.

This case does not clearly fall into one category or the other. On the one hand, DeMauro's falsehood appears to be more serious than a trivial lie about tending to a personal matter while on duty. On the other hand, because DeMauro's action could have been a joke or

8

"hoax," as Rutka put it (Rec2 at CIC 354), DeMauro's falsehood does not appear to rise to the level of a lie about committing significant property damage while in a squad car, as in *Kupkowski*.

Nonetheless, the Board found that the lie was related to police business, DeMauro's employment, and this conclusion does not appear to be unreasonable. Furthermore, DeMauro did lie about the existence of a court order, something that officers are duty-bound not to do given their role in law enforcement. Moreover, the Board found that DeMauro's apology, issued subsequent to his lie, was given only after prompting from DeMauro's attorney. Therefore, it is unclear whether DeMauro was genuinely sorry for his actions or even whether DeMauro would have exposed the nature of his lie had his attorney not persuaded him to return Rutka's call and apologize. Finally, DeMauro had been in the police department for only three years and had already incurred three reprimands during this time. DeMauro's actions could not be mitigated by a long unblemished career with the police department. *Compare, e.g., Christenson*, 404 N.E.2d at 342 ("The fact that Christenson served the Department for 23 years and as a Captain for 9 years without previous discipline infractions militates against his discharge.") Given all these circumstances and the principle that this court must give substantial deference to the Board's finding of cause, this court cannot say that the Board's findings were unrelated to "requirements of service" or were "so trivial as to be unreasonable or arbitrary." *Kvidera v. Bd. of Fire and Police Comm'rs.*, 599 N.E.2d 747, 755 (Ill.App.Ct. 1989).

DeMauro advances a number of arguments favorably comparing his situation with some of the cases cited above. Unlike in *Kreiser, Humbles*, and *Christenson*, DeMauro argues, he made his statement off-duty; his violations did not involve additional misconduct; and he did not lie in response to an inquiry from his superior. Therefore, DeMauro argues, because courts found that cause did not exist in those cases, an even stronger argument could be made that cause does not exist here. Problematic for DeMauro, however, is that many courts do not distinguish

9

between off-duty and on-duty behavior. *Davenport v. Bd. of Fire and Police Comm'rs. of City of Peoria*, 278 N.E.2d 212, 216 (Ill.App.Ct. 1972) ("It has long been settled in our state that there is no distinction between 'off duty' or 'on duty' misconduct by a police officer.") Further, the fact that in other cases, the officers might have committed a few trivial acts while DeMauro committed only one does not take away from the import of his one act. "It is established law in Illinois that in disciplinary proceedings against a policeman, a single valid finding of a violation of departmental rules will authorize dismissal." *Noro*, 365 N.E.2d at 424. Additionally, DeMauro's argument that he "volunteered" a lie as opposed to making a lie in response to questions is not persuasive. (Pl. Mem. in Sup. of Mot. for Judg. on ARA Claim at 15.) It is not apparent to the court that telling a lie in response to intrusive questions about marital issues, as a state court found to be the case in *Humbles*, is worse than affirmatively telling a lie. Unlike in the former instance, where one must lie in order to hide the truth, one has the option of silence in the latter instance.

Finally, DeMauro argues that as *Kreiser, Humbles, and Christenson*, "there was no evidence that DeMauro's untrue statement to Rutka lowered police morale or undermined public confidence in the Town police department." (Pl. Mem. at 16.) Therefore, as in those cases, the finding of cause here must be reversed. DeMauro is reminded, however, that "the board, and not the reviewing court, is in the best position to determine the effect of the officer's conduct on the department," and that "the reviewing court must give the board's determination of 'cause' considerable deference." *Valio v. Bd. of Fire and Police Comm'rs of the Village of Itasca*, 724 N.E.2d 1024, 1032 (Ill.App.Ct. 2000). Therefore, the court will leave the Board's finding of cause undisturbed.

II. DeMauro's Request for Back Pay

DeMauro contends that the Town should provide him with back pay between the time that the Town stopped paying him, August 1, 1997, and the time that the Board found probable

10

cause to proceed on the Rule 26 violation, December 8, 1997. In essence, DeMauro argues that he should not have been suspended without pay during the time that he was suspended based on a charge (failure to obtain firefighter certification) that the Town subsequently withdrew. DeMauro contends that the Town erred in denying him back pay when the Town explained that (1) it did not possess authority to award back pay, and (2) it was not required to provide him with back pay given that he was ultimately discharged. Arguing that the Town possesses the authority to provide back pay and must pay him, DeMauro points to 65 ILCS 5/10-2.1-17, which provides that "[i]f the Board of Fire and Police Commissioners determines that the charges are not sustained, the officer or member shall be reimbursed for all wages withheld, if any." Furthermore, DeMauro claims that the Town, under this same code, was prohibited from suspending an officer for more than 30 days without pay, which was the case with him.

The facts here are not in dispute. Rather, it appears that the disputes are legal in nature. "'The deference accorded to an administrative agency's findings of fact is not accorded to its conclusions of law, including the erroneous construction of a statute or the legal effect of factual findings.'" *Taylor v. Cook County Sheriff's Merit Bd.*, 736 N.E.2d 673, 677 (Ill.App.Ct. 2000) (citations omitted).

Under 65 ILCS 5/10-2.1-17, a board possesses authority to award back pay provided that it determines that the charges brought against an officer are not sustained. *See People ex rel. Cotter v. Conlisk*, 308 N.E.2d 1, 2 (Ill.App.Ct. 1974). Although DeMauro does not explicitly say this, he appears to suggest that the firefighter charge that was withdrawn against him is a charge that the Board deemed unsustainable. DeMauro, however, appears to be wrong. The language of the statute makes clear that in order for a board to award back pay, it must "determine" that the charges against an officer were not sustained. 65 ILCS 5/10-2.1-17; *see also Solich v. George and Anna Portes Cancer Prevention Center of Chicago, Inc.*, 630 N.E.2d 820, 822 (Ill. 1994) (stating that in order for courts to "ascertain and give effect to the true intent and meaning of the

11

legislature," they should "look first to the statutory language, for the language of the statute is the best indication of the legislature's intent.") Case law states that in order to award back pay, a board must *find* that the evidence did not warrant the charge asserted against the officer. *See McCoy v. Kamradt*, 483 N.E.2d 544, 550 (Ill.App.Ct. 1985) (stating that a board can award back pay only if it "finds" that the suspension is "unwarranted.") It is undisputed that in this case, the Board did not make any sort of determination or finding regarding the firefighter charge because it was withdrawn before the Board could consider it. Failing to cite any authority to the contrary, DeMauro is incorrect that the charge withdrawn against him was a charge that the Board deemed unsustainable.

DeMauro also contends that 65 ILCS 5/10-2.1-17 prohibited the Board from suspending him for more than 30 days without pay. The law states that a "[b]oard may suspend any officer or member pending [a] hearing with or without pay, but not to exceed 30 days." 65 ILCS 5/10-2.1-17. Though this language supports DeMauro's general statement of the law, there is ample judicial authority stating that DeMauro is incorrect regarding the application of the law to his particular case. Boards are retroactively allowed to suspend officers for more than 30 days without pay if the officer is ultimately discharged. *McCoy v. Kamradt*, 483 N.E.2d 544, 549 (Ill.App.Ct. 1985). Quoting *Cotter*, 308 N.E.2d at 2, the court in *McCoy v. Kamradt* stated the following:

> [t]he statute provides for procedural protection against arbitrary action . . .; it does not mandate the payment of a salary to one who is under charges with a recommendation of dismissal. If the Police Board finds a dismissal is unwarranted, then an officer is entitled to back pay because he was wrongfully deprived of his right to work. But one whose dismissal is affirmed by the Police Board can have no such claim.

483 N.E.2d at 549.

The court held that this was true despite the fact that the officer in *McCoy* had been suspended without pay for over four months by the time of his hearing, in which the board

12

decided that the officer should be discharged. As in *McCoy,* the board here ultimately discharged DeMauro. Therefore, DeMauro's arguments notwithstanding, the Board was entitled to suspend him without pay for more than 30 days. This court will not reverse the Board's decision to deny back pay to DeMauro.

## Conclusion

For the foregoing reasons, DeMauro's motion for judgment on his ARA claim is denied.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: August 15, 2001

13