UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH DEMAURO, | ) |
| | ) |
| Plaintiff | ) |
| | ) Case No. 98 C 8318 |
| v. | ) |
| | ) Judge Joan B. Gottschall |
| BETTY LOREN-MALTESE, et al. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Joseph DeMauro ("DeMauro") sued Betty Loren-Maltese ("Loren-Maltese"), the Town of Cicero ("Town"), Louis Guido ("Guido"), Leonard Rutka ("Rutka"), and the Town of Cicero Board of Fire Police and Public Safety Commissioners ("Board") (collectively "defendants")[1] for retaliation against him for his protected speech in violation of the First Amendment (Count I), deprivation of property without Due Process (Count II), and conspiracy (Count III).[2] Defendants, except for the Board, have moved for summary judgment on all three counts.

**I.     Summary Judgment Standard**

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.

---

[1]DeMauro also initially sued Merrick Scott Rayle ("Rayle"), but the claims against Rayle were dismissed on October 25, 2004 pursuant to a stipulation.

[2]DeMauro's complaint also included a claim for administrative review under 735 ILCS 5/3-103 (Count IV). On August 15, 2001, the court denied plaintiff's motion for judgment on Count IV, and that count was dismissed.

1

Civ. P. 56(c). A party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321 (1986).

In this case, the parties have made deciphering which facts are undisputed challenging. Although defendants did not file a motion to strike, they have objected to a number of DeMauro's facts as relying on evidence that is inadmissible hearsay.

> [H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial, except that affidavits and depositions, which (especially affidavits) are not generally admissible at trial, are admissible in summary judgment proceedings to establish the truth of what is attested or deposed, provided, of course, that the affiant's or deponent's testimony would be admissible if he were testifying live.

*Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). As detailed more fully below, the court has considered hearsay testimony only when it would be admissible at trial, consistent with the law governing on summary judgment.

Additionally, on summary judgment, the parties are required to support their statements of fact or disputes as to those statements with citations to admissible evidence. *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000). As discussed more fully below, the court has not considered facts not supported by the record evidence cited, and has deemed facts admitted where the "dispute" as to the fact is not supported by the evidence cited.

**II.     Background**[3]

DeMauro worked as a Public Safety Officer ("PSO") for the Town of Cicero from December 1993 until November 1998. Loren-Maltese was the Cicero Town President. In November 1996, Guido became the Cicero Fire Department's Chief of Operations. In 1996, Rutka was Director of Internal Affairs for the Cicero Police Department, and in 1997, he became Deputy Superintendent of the Police Department.

In 1997, there were primary and general elections for Town President of Cicero. Charles Hernandez ("Hernandez"), a police officer, and Emil Schullo ("Schullo"), a former police superintendent, ran against Loren-Maltese, the incumbent. Before the 1997 campaign, DeMauro was a member of the Town Republican Organization, Loren-Maltese's party, but DeMauro switched his political affiliation and supported Hernandez in the election. DeMauro's activities were not reported in the media, and DeMauro is unaware that any Town officials saw him at Democratic political events. During the 1997 campaign, however, DeMauro testified that a Republican precinct captain confronted DeMauro about his switch in affiliation.

In April 1997, Loren-Maltese was re-elected as Town President. Rutka and Guido were not aware of who DeMauro supported in the election.[4] Following Loren-Maltese's re-election as Town President, at least 30 Cicero police officers, constituting about one-third of the department, were suspended and had charges filed against them seeking their discharge. Hernandez averred

---

[3]The narrative that follows is adapted from the parties' Local Rule 56.1 statements. Where the facts are disputed, the court resolves the disputes in DeMauro's favor as the non-movant.

[4]As to Rutka, DeMauro says his knowledge is disputed but does not cite to any record support for this conclusion.

3

that these 30 officers were all either his or Schullo's supporters. Rayle testified that Loren-Maltese was the Town official who decided to lodge charges against every officer who had discharge proceedings initiated against him before the Board.

Public Safety Officers were required to complete training in both law enforcement and firefighting. DeMauro was never assigned any firefighting duties and was part of the Police Department collective bargaining unit, not that of the Fire Department. It is undisputed that DeMauro knew he had to take the Firefighter II exam, but he disputes that he knew he was required to pass it. DeMauro took and failed the exam twice. On a third occasion, he showed up late for the exam and was not allowed to take it. He never passed the exam.

In May 1997, Rutka suspended DeMauro with pay because DeMauro had never passed the exam.[5] It is disputed as to who made the decision to suspend DeMauro. Rutka testified that Loren-Maltese directed him to do so. Guido, who signed the initial charges, testified that Rutka and Fire Chief Smetana made the decision.[6] Although Guido signed the charges, he did not

---

[5] DeMauro states that this fact is disputed, but his citation to the record does not show any dispute. DeMauro cites to Rutka's deposition in which he testified that he suspended DeMauro and two others because they did not pass the exam. Rutka testified that someone told him to suspend them and that he thought it was "the President."

[6] DeMauro states that PSOs who had not been certified as firefighters but who supported Loren-Maltese were not suspended without pay or discharged. His cites to the record do not adequately support this assertion. DeMauro testified as to the names of several other PSOs who had not been certified as firefighters, but his cites to the record do not establish the political affiliation of these officers. DeMauro testified that charges against some officers, Karl Berger, Officer Fiderosso, and Officer Siregades, were dropped after they met with Loren-Maltese, and that these officers returned to work; DeMauro did not know the substance of the conversations that these officers had with Loren-Maltese. Rutka testified that he suspended DeMauro, Ron Graft (Rutka's stepson), and Karl Berger because they had not passed the exam. Rutka testified that Graf and Berger were brought back to the police department when the Town dropped the PSO program. Loren-Maltese testified that Berger became a political supporter of hers, but she could not remember when.

4

make the decision to bring the charges against DeMauro, and he had no further involvement in DeMauro's disciplinary proceeding. Rayle testified that Loren-Maltese was always consulted before charges were filed and that he could not recall preparing charges against any other officers who had not passed the firefighter exam.

In August 1997, DeMauro was removed from the Cicero payroll. DeMauro testified that, when he went to pickup his paycheck, James Terracino told him, "Per Betty, you are not to get a paycheck no more." Terracino then said "It's not me. You know what this is all about."[7] Rutka had no involvement in DeMauro's removal from the payroll.[8]

While the charges were pending, in October 1997, DeMauro called Rutka and told him

---

This evidence establishes that other public safety officers were not certified as firefighters. Two other officers, Berger and Graf, were suspended with pay when DeMauro was suspended, and Berger at some point became a Loren-Maltese political supporter. Berger and Graf ultimately returned to work.

[7]Defendants argue that this statement is inadmissible hearsay. DeMauro's testimony is so-called double hearsay; to be admissible, both Loren-Maltese's alleged statement to Terracino and Terracino's statement to DeMauro must be admissible. Loren-Maltese's statement is admissible as an admission of a party opponent. Fed. R. Evid. 801(d)(2). Terracino's statement may be admissible under Fed. R. Evid. 801(d)(2)(D) as the statement of a party's agent concerning a matter within the scope of the agency. Terracino was the Human Resources Director for the Town, and this statement made when DeMauro was attempting to pick-up his paycheck would seem to be within the scope of Terracino's employment.
DeMauro also testified that Richard Caravetta, a Board member during DeMauro's discharge proceedings, told him that Loren-Maltese told Caravetta that he was removed from the Board because he was the only Board member who did not vote to terminate DeMauro. DeMauro also testified that Caravetta told him "it was bullshit the way you were fired." Loren-Maltese's statement would be an admission of a party opponent, but Caravetta's statements are inadmissible hearsay, apparently made to DeMauro at a local restaurant after Caravetta was no longer a Board member.

[8]DeMauro states that this fact is disputed, but his citation to the record does not support the existence of a dispute. DeMauro cites to Rutka's deposition in which Rutka testified that he suspended DeMauro and two others with pay and that later Loren-Maltese told him that suspensions were to be without pay. Rutka testified that he did not make the decision to transform DeMauro's suspension from with pay to without pay.

5

that a judge at the Daley Center had ordered DeMauro's reinstatement. Later that day, at the urging of his attorney, DeMauro called Rutka again and told him that the previous call was "a hoax."

In November 1997, amended charges were filed against DeMauro which alleged that (1) DeMauro violated Rule 26 of the Rules of Conduct by falsely reporting that a judge had ordered his reinstatement and (2) DeMauro violated the Town residency requirement. Guido had no involvement in the amended charges. Rayle testified that Loren-Maltese decided to bring the amended charges against DeMauro, although Loren-Maltese denies it.

On June 30, 1998, the Board began an evidentiary hearing on the charges against DeMauro. The Town proceeded only on the Rule 26 violation. Rayle testified that Loren-Maltese was involved in the decision to drop the charges based on firefighter certification and residency requirement and to proceed only on the false report charge. At the hearing, DeMauro was represented by counsel, and DeMauro and Rutka were the only witnesses. The Board found that there was cause to suspend and discharge DeMauro.[9] After his discharge, DeMauro requested that the Board order the Town to pay him backpay from August 1 to December 8, 1997, but the Board denied the request.

It is undisputed that the Town does not have an express policy of discharging employees based on their political beliefs.

---

[9]DeMauro states: "While Rayle was representing Loren-Maltese and the Town, every case that was brought before the Board that went to hearing resulted in the officer being discharged." DeMauro's citation to the record does not support this assertion. Rayle testified that he could not remember whether the board had ever voted not to discharge an officer and that he did not want to guess. Loren-Maltese also testified that she did not know whether there were any cases where the Board voted not to discharge an officer.

6

DeMauro testified that, in March 1999 while he was working as a temporary worker for a construction company, he and everyone at the jobsite were arrested for operating without a business license. DeMauro testified that Mary Lynn Chlada told Officer Perry who told DeMauro that she had been in contact with Loren-Maltese and Loren-Maltese told her that if DeMauro and another former officer did not have a permit they should be arrested. Then, Officer Perry told DeMauro that he heard Felix Matecucci tell Mary Lynn Chlada that it is the town's policy not to arrest workers. DeMauro also testified that "Bernie," apparently Deputy Superintendent Bernard Harrison, said that Loren-Maltese wanted them arrested.[10]

DeMauro alleges that he was suspended and terminated based on his political affiliation. DeMauro also alleges that the Board violated his due process rights by not providing him with an impartial arbitrator and that the defendants engaged in a conspiracy to deprive him of his rights. On September 9, 2002, this court denied defendants' motions for summary judgment on Counts I-III. In denying summary judgment, the court stated: "The existence in the administrative record of a legitimate reason for firing DeMauro, dispositive on administrative review, is helpful to defendants on the constitutional claim only if another, impermissible motive was not in fact decisive."

### III. Discussion

#### A. Count I for First Amendment Retaliation: Individual Defendants

In Count I, DeMauro alleges that he was suspended, removed from the payroll, and ultimately discharged because of his political support for Hernandez and his opposition to Loren-

---

[10] With so many levels of hearsay, it is difficult to determine whether this evidence, if presented this way at trial, would be admissible. Since all of the declarants were Town employees, the court assumes for the purpose of this motion that it would be admissible.

Maltese. In *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004), the Seventh Circuit articulated the approach for evaluating a § 1983 claim for retaliation in violation of First Amendment rights in the public employment context under *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274 (1977): (1) the court must "determine whether the employee's speech was constitutionally protected"; (2) "plaintiff must establish that the speech was a substantial or motivating factor in the retaliatory action"; (3) defendant can then "establish that the same action would have been taken in the absence of the employee's protected speech."

Defendants concede for the purpose of the motion for summary judgment that DeMauro engaged in constitutionally protected activities. Memorandum in Support of Motion for Summary Judgment, at 7 n.27.[11] Defendants argue, however, that DeMauro has not established that his political affiliation was a substantial or motivating factor in his suspension and discharge. There are three individual defendants remaining in this case: Loren-Maltese, Guido, and Rutka. For the individual defendants to be liable for retaliating against DeMauro for his switch in political affiliation, DeMauro must show that defendants knew of it. "The protected conduct cannot be proven to motivate retaliation if there is no evidence that the defendants knew of the protected activity." *Morfin v. City of East Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003) (citing *Stagman v. Ryan,* 176 F.3d 986, 1000-01 (7th Cir. 1999)) (internal quotations omitted). As to Guido, DeMauro did not dispute that "[a]t all times relevant to the complaint, Guido was unaware of DeMauro's political affiliation during DeMauro's employment

---

[11]Defendants attempt to retract this concession in their reply by citing for the first time DeMauro's certified public voting records showing that DeMauro voted in the Republican primary in February 1997. While this may be relevant evidence, it does not conclusively show that DeMauro did not oppose Loren-Maltese. At most, it shows that there is a disputed issue of material fact as to who DeMauro supported in the 1997 primary election.

8

as a PSO." Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts, at ¶ 60. As to Rutka, DeMauro "disputes" that "[a]t all times relevant to the complaint, Leonard Rutka did not know who DeMauro supported during the 1997 municipal election." DeMauro does not support his dispute with any citation to the record, and therefore, this "fact" must be deemed admitted. Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts, at ¶ 59. Since Rutka and Guido did not know of DeMauro's switch in political affiliation, they cannot be liable for retaliating against him. Summary judgment in favor of Rutka and Guido as to Count I is granted.

However, DeMauro has raised disputed issues of material fact as to whether Loren-Maltese knew of DeMauro's switch in political affiliation. DeMauro avers that he was a Precinct Lieutenant for the Town Republican Organization prior to 1996 and that, for a portion of that time, he was Precinct Lieutenant in the same precinct in which Loren-Maltese served as Precinct Captain. DeMauro avers that he changed his political affiliation in 1996, and that in the 1997 election for Town President, he supported Hernandez and opposed Loren-Maltese. DeMauro displayed a Hernandez campaign poster in the window of his home. DeMauro testified in his deposition that he was confronted by the Republican Precinct Captain, Felix Matecucci, about his switch in affiliation. Precinct Captains gather information about which voters express support for which political organization and report this information to the Town Republican Organization. Loren-Maltese knew that there were three political factions in the Cicero Police Department: one that supported her, one that supported Hernandez, and one that supported Schullo. DeMauro argues that a jury could infer from these facts that Loren-Maltese knew that DeMauro switched his political affiliation to support her opponent.

9

The court agrees that DeMauro has adequately shown that disputed questions of material fact exist as to whether Loren-Maltese knew of his switch in political affiliation. A jury could find that Loren-Maltese knew about his switch in political affiliation because of her position in the Town Republican Organization, given that a Republican Precinct Captain confronted DeMauro. The summary judgment papers are richer in suspicion than context, but a trial would likely generate enough context so that Loren-Maltese's knowledge could be inferred.

Defendants next argue that DeMauro has not met his burden of showing that his political support for Hernandez was a substantial or motivating factor in his suspension and discharge. The issue is whether DeMauro has made a sufficient showing as to Loren-Maltese, the only remaining individual defendant.

Hernandez avers that, after Loren-Maltese's re-election, at least 30 Cicero police officers, about one-third of the department, were suspended and had charges filed against them seeking their discharge. Hernandez avers that these 30 officers were all either his or Schullo's supporters. Given the proximity in time between Loren-Maltese's re-election (April 1997) and DeMauro's suspension (May 1997), Hernandez's averments that the Town posted a list of officers against whom disciplinary proceedings had been brought which included only officers who supported Loren-Maltese's opponents during the recent election supports an inference that DeMauro's switch in political affiliation was a substantial or motivating factor in his suspension and discharge. Since a disputed issue of material fact is thus established, the court need not address DeMauro's other arguments: (1) that a jury could infer bad motive from defendants' failure to identify who was responsible for the actions against DeMauro, and (2) that, in specific

instances, officers who supported Loren-Maltese were treated more favorably.[12]

Since DeMauro has satisfied his burden to show that his political affiliation was a substantial or motivating factor in his suspension and discharge, defendants, to prevail, must "establish that the same action would have been taken in the absence of the employee's protected speech." *Spiegla*, 371 F.3d at 935. Defendants argue that they had legitimate, non-political reasons for suspending and terminating DeMauro, namely, that DeMauro falsely told Rutka that a judge had ordered DeMauro's reinstatement and that DeMauro never passed the Firefighter II exam. As to DeMauro's false statement, defendants argue: "Significantly, and dispositively for this issue, this Court already ruled that the Town had a legitimate reason for terminating DeMauro." Memorandum in Support of Motion for Summary Judgment, at 9. Defendants misapprehend this court's prior ruling. The court previously held that the fact that the Town had a legitimate reason for terminating DeMauro was dispositive on the administrative review claim, but was <u>not</u> dispositive on his constitutional claim. Order at 2 (Sept. 9, 2002).[13]

---

[12]For the most part, these specific instances are not adequately supported by the evidence cited by DeMauro. For example, although DeMauro claims that other PSOs who had not passed the Firefighter II exam but who supported Loren-Maltese were not suspended without pay or discharged, his cited evidence does not establish the political affiliation of many of the officers named.

[13]Defendants argue in a footnote that this court's September 9, 2002 opinion is no longer good law because this court's use of a but-for causation requirement was disavowed by the Seventh Circuit in *Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004). Memorandum in Support of Motion for Summary Judgment, at 5 n.26. Defendants misinterpret this court's prior opinion or the Seventh Circuit's opinion in *Spiegla*.
    Prior to *Spielga*, some Seventh Circuit cases required the plaintiff to prove that his First Amendment activity was the but-for cause of the retaliatory action. *Spiegla*, 371 F.3d at 941-42. The Seventh Circuit rejected this requirement, stating that "a plaintiff alleging First Amendment retaliation must prove by a preponderance of the evidence that his or her protected activity was a motivating factor in the defendant's retaliatory action. To clarify, a motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the

Despite the existence of a legitimate reason for termination, defendants may still be liable for actions taken against DeMauro if they would not have taken those actions in the absence of his protected speech. This is a disputed issue of material fact: whether the Town's proffered reasons for suspending DeMauro – originally failure to pass the Firefighter II exam and later the Rule 26 violation and violation of the residency requirement – were the actual reasons for suspending him. DeMauro has put forward evidence that charges were brought only against officers who supported Hernandez and Schullo shortly after Loren-Maltese's re-election. Ultimately, this issue is likely to turn on the credibility of witnesses – something that this court cannot decide on summary judgment. *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). Summary judgment is denied as to Loren-Maltese.[14]

B. Count I for First Amendment Retaliation: The Town

The Town argues that it should be dismissed as a defendant because DeMauro's evidence

---

defendant's actions." *Id.* at 942. The Seventh Circuit stated that, if plaintiff meets his burden, defendant can then "establish that the same action would have been taken in the absence of the employee's protected speech." *Id.* at 935.

In this court's 2002 opinion, the court discussed the "but-for causation requirement" in terms of the defendants' burden. Order, at 2 (Sept. 9, 2002). The court stated: "The existence in the administrative record of a legitimate reason for firing DeMauro, dispositive on administrative review, is helpful to defendants on the constitutional claim only if another, impermissible motive was not in fact decisive." *Id.* The defendant's burden, if it wishes to prevail once plaintiff has carried its burden, is to show the existence of a permissible but-for cause: that despite the speech the discharge would have occurred anyway. *Spiegla* did not affect this court's prior holding because it dealt with plaintiff's burden whereas this court's prior order dealt with defendant's burden.

[14]Because the Board did not move for summary judgment, both the Board and Loren-Maltese remain as defendants as to Count I.

does not support municipal liability. The touchstone of a § 1983 action against a governmental body is an allegation that "official policy" is responsible for a deprivation of a right protected by the Constitution. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 694 (1978). "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* This requirement is meant to "distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cinncinnati,* 475 U.S. 469, 479 (1986). There are three ways in which a municipality can be held liable under § 1983. "There must be: (1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well settled as to constitute a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an allegation that a person with final policy-making authority caused the constitutional injury." *Lawrence v. Kenosha County*, 391 F.3d 837, 844 (7th Cir. 2004) (citing *Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 735 (7th Cir. 1994)).

DeMauro argues that there was a widespread practice of First Amendment retaliation after Loren-Maltese's re-election. As discussed above, DeMauro has presented evidence that, shortly after Loren-Maltese's re-election, charges were brought against a significant number of officers who supported Loren-Maltese's political opponents. This is sufficient to raise a disputed issue of material fact as to whether there was a widespread practice of First Amendment retaliation against officers who supported Loren-Maltese's political opponents. The motion for

13

summary judgment on Count I as to the Town is denied.[15]

C. <u>Count II for Violation of Due Process: All Defendants</u>

In Count II, DeMauro alleges that he was terminated without due process because the Board was not an impartial decisionmaker; rather, it was controlled by Loren-Maltese. Defendants argue that DeMauro has not presented sufficient evidence to create a disputed issue of material fact on this claim. The court disagrees.

In opposition to the motion for summary judgment, DeMauro cites the testimony of Clarence Gross ("Gross") in an unrelated case in which Gross testified that, when Loren-Maltese appointed him as Chairman of the Board, she told him that he would report solely to her and that he did report to her. There has been no argument that it is legitimate for the Chairman to view himself as having a reporting relationship with the Town President. Gross' testimony is sufficient to create a disputed issue of material fact as to whether the Board was an impartial decisionmaker or whether it was controlled by Loren-Maltese. Summary judgment on Count II as to Loren-Maltese and the Town is denied.[16]

D. <u>Count III for Conspiracy: All Defendants</u>

Defendants argue that DeMauro has failed to establish that there was an agreement between defendants. For a conspiracy: "(1) [plaintiff must] allege the existence of an agreement;

---

[15]Since DeMauro has sufficiently established a widespread practice, the court need not consider DeMauro's other argument, namely, that officials with "final policymaking authority" were responsible for the First Amendment retaliation against him.

[16]To the extent that Rutka and Guido are defendants in Count II, summary judgment is granted in their favor since there is no indication they were involved in the Board's decision to terminate DeMauro. Because the Board did not move for summary judgment, the Board remains a defendant as to Count II.

14

(2) if the agreement is not overt, the alleged acts must be sufficient to raise the inference of mutual understanding (*i.e.*, the acts performed by the members of a conspiracy are unlikely to have been undertaken without an agreement); and (3) a whiff of the alleged conspirators' assent must be apparent in the complaint." *Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000) (internal citations and quotations omitted).

In opposing summary judgment on the conspiracy claim, DeMauro cites this court's January 20, 2000 order in which the court stated, on defendants' motion to dismiss, that DeMauro had "pleaded sufficient facts from which a 'meeting of the minds' can be inferred. Indeed, the gravamen of the complaint – the Police Board action to carry out the will of Loren-Maltese – could not, in all likelihood, have occurred without some meeting of the minds." Memorandum in Opposition, at 15. As discussed above, DeMauro has presented sufficient evidence to create a disputed issue of material fact on both his First Amendment and Due Process claims. As part of this evidence, DeMauro has presented sufficient evidence to show that some communication occurred between Loren-Maltese and others to effectuate DeMauro's (and other officers') suspension and discharge. DeMauro has also created a disputed issue of material fact as to whether Loren-Maltese controlled the Board. If Loren-Maltese's control of the Board is proven at trial, then DeMauro may well be able to prove that Loren-Maltese conspired with members of the Board to terminate him in retaliation for his political affiliation. Summary judgment on Count III as to Loren-Maltese and the Town is denied.[17]

---

[17]To the extent that Rutka and Guido are also defendants in Count III, summary judgment is granted in their favor. Because they did not know of DeMauro's switch in political affiliation, they could not have conspired to deprive him of his First Amendment rights. Because the Board did not move for summary judgment, the Board remains a defendant as to Count III.

## III. Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part. Summary judgment is granted in favor of Rutka and Guido on Counts I-III, and Rutka and Guido are terminated as defendants. Summary judgment as to Loren-Maltese and the Town on Counts I-III is denied. The Board did not move for summary judgment, and as such, the Board remains a defendant on Counts I-III.

ENTER:

_____/s/_____
Joan B. Gottschall
United States District Judge

Dated: March 29, 2006