## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH DEMAURO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98 C 8318 |
| | ) | Judge Gottschall |
| BETTY LOREN-MALTESE; TOWN OF CICERO; | ) | |
| LOUIS GUIDO; MERRICK SCOTT RAYLE; | ) | |
| LEONARD RUTKA; and TOWN OF CICERO | ) | |
| BOARD OF FIRE, POLICE AND PUBLIC SAFETY | ) | |
| COMMISSIONERS, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

Plaintiff JOSEPH DEMAURO ("DeMauro"), by his attorneys, and pursuant to Fed. R. Civ.

P. 59(e), moves the Court to alter or amend the judgment entered in his favor on November 13, 2006,

by (1) entering an injunctive Order reinstating DeMauro as a Cicero Police Department Patrol

Officer, with full restoration of seniority and benefits, including but not limited to vacation time and

Town pension contributions, and (2) awarding DeMauro prejudgment interest on his lost wages, on

attorneys' fees and other expenses incurred during the proceedings before the Board of Fire, Police

and Public Safety Commissioners of the Town of Cicero (the "Board"), and on the damages the jury

awarded DeMauro for mental/emotional pain and suffering.   In support of his motion, DeMauro

states as follows:

### THE VERDICT

On or about November 13, 2006, judgment was entered on the jury's verdict in this matter,

which found that Defendants Betty Loren-Maltese and the Town of Cicero had violated DeMauro's

First Amendment and Due Process rights, and that Defendants had conspired to do so, and awarded

DeMauro $250,000.00, as compensatory damages, including lost wages through the end of October 2006, as well as damages for mental/emotional pain and suffering.  *See* Joint Instruction # 37. DeMauro's lost wages through October 31, 2006, were calculated to be $157,735.54. DeMauro also incurred $9,153.17 in attorneys fees and expenses during the discharge proceedings before the Board. These amounts were not contested by Defendants at trial. The balance of the verdict, $83,111.29, compensated DeMauro for his mental/emotional pain and suffering, starting from his suspension on May 19, 1997.

**REINSTATEMENT**

DeMauro seeks reinstatement to his employment as a Cicero Police Department Patrol Officer, to continue the law enforcement career derailed by Defendants in retaliation for DeMauro exercising his First Amendment right to engage in political activities by supporting Charles Hernandez and opposing Betty Loren-Maltese during the 1997 municipal election campaign.

Reinstatement is "normally an integral part of the remedy for a constitutionally impermissible employment action." *Baird v. Bd. of Educ. for Warren Comm. Unit School Dist. No. 205*, 389 F.3d 685, 692 (7th Cir. 2004), citing *Reeves v. Claiborne County Bd. of Educ.*, 828 F.2d 1096, 1101 (5th Cir.1987). *Cf., United Food & Commercial Workers Local 100A v. John Hofmeister & Son, Inc.*, 950 F.2d 1340, 1345 (7th Cir.1991) ("Reinstatement and back pay awards are common remedies in wrongful discharge cases").[1] Although within the discretion of the trial court, a reinstatement order is appropriately entered when requested by the plaintiff and when the circumstances warrant such

---

[1] As noted in a leading treatise, judicial remedies in an unlawful discharge case are tailored "to make victims whole for injuries suffered as the result of unlawful employment discrimination," and reinstatement "is the preferred make-whole remedy." Lindemann & Grossman, Employment Discrimination Law (American Bar Association, 3d Ed. 2002 Cumulative Supp.), Ch. 40 § III at 1194.

an order. *Ellis v. Ringgold School Dist.*, 832 F.2d 27, 30 (3d Cir. 1987). Reinstatement may not be appropriate where acrimony between the parties exists and "the result would be undue friction and controversy." *Hutchison v. Amateur Electronic Supply, Inc.*, 42 F3d. 1037, 1045-46 (7th Cir. 1994) *citing McKnight v. General Motors Corp.*, 908 F.2d 104, 115 (7th Cir. 1990)). A court, however, "must be careful not to allow an employer to use its anger or hostility toward the plaintiff for having filed a lawsuit as an excuse to avoid the plaintiff's reinstatement." *Deloughery v. City of Chicago*, 2004 U.S. Dist. LEXIS 9102, * 25 (N.D. Ill. 2004).

There is no evidence to suggest that DeMauro's reinstatement would result in undue friction or controversy. None of the conspirators involved in the conspiracy against DeMauro are currently employed by the Town of Cicero. Defendant Loren-Maltese, the key actor in the political discrimination and retaliation against DeMauro, is no longer Town President and has approximately four more years of incarceration remaining under her sentence for mail and wire fraud. Leonard Rutka, who served DeMauro with the charges seeking his termination, is now chief of the Morton College Police Department. Luis Guido, the deputy fire chief who signed the charges against DeMauro, has retired. Merrick Scott Rayle is no longer the Town Attorney and currently resides in California. Clarence Gross was removed as Board Chairman by Loren-Maltese and was removed from his other Town positions by Loren-Maltese's successor. He currently is embroiled in litigation against the Town.

Larry Dominick ("Dominick") is the current Town President. Although he was a Loren-Maltese supporter and a Police Lieutenant at the time of DeMauro's termination, Dominick was not implicated in the conspiracy against DeMauro. There is no legitimate reason for Dominick or his administration to be hostile to DeMauro upon his reinstatement.

3

Moreover, there currently are at least three Patrol Officer vacancies in the Cicero Police Department resulting from the recent retirements of three officers: Thomas Kratovil, Thomas Lasica and David Olszewski. There have been no new Patrol Officers hired since those officers retired and there are no current Cicero Police Department trainees at the police academy.

Finally, numerous Cicero Police Officers who had been terminated by the Board during the Loren-Maltese regime have been reinstated as the result of their prevailing in subsequent labor arbitrations, including but not limited to Officers Contreras, Olzewski, Sarabia and Kuratko, who were (and in Kuratko's case, still is) among the plaintiffs in the related *Hernandez* case. DeMauro is aware of nothing that would suggest that the reinstatement of those officers caused any disruption in the Cicero Police Department.

For all these reasons, there is no reason to deprive DeMauro of reinstatement, with restoration of all lost seniority and benefits, "normally an integral part of the remedy for a constitutionally impermissible employment action" such as Defendants' termination of DeMauro's employment in the Cicero Police Department. *Baird*, 389 F. 3d at 693.[2]

## PREJUDGMENT INTEREST

DeMauro also seeks prejudgment interest on his lost wages -- $157,735.54, on the attorneys' fees and expenses associated with his Board proceedings -- $9,135.17, and on the $83,111.29 awarded to him by the jury for his mental/emotional pain and suffering.

Prejudgment interest is an element of complete compensation. *City of Milwaukee v. Cement*

---

[2]If the Court reinstates DeMauro, he will seek additional relief in the form of lost wages covering the period of November 1, 2006 through the last day before the effective date of his reinstatement. If the Court declines to reinstate DeMauro, he will seek an appropriate front pay award from the Court.

*Division, National Gypsum Co.*, 515 U.S. 189, 195-196 & n.7 (1995)(admiralty case recognizing compensatory nature of prejudgment interest in numerous contexts); *West Virginia v. United States*, 479 U.S. 305, 310 & n.2 (1987), and is routinely added to compensatory damage awards. *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 572 (7th Cir. 2003); *First National Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472, 480-81 (7th Cir. 1999); *In re. Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1331 (7th Cir. 1992)(noting that prejudgment interest is "an ordinary part of any award under federal law"). Prejudgment interest should apply to all past injuries, including past emotional injuries. *Thomas v. Texas Dept. Of Criminal Justice*, 297 F.3d 361, 372 (5th Cir. 2002). Without prejudgment interest, the plaintiff's compensation is incomplete and the defendant has an incentive to delay. *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989). It is an abuse of discretion not to award prejudgment interest on damages representing compensation for lost wages. *Gierlinger v. Gleason*, 160 F. 3d 858, 873-74 (2d Cir. 1998).

Prejudgment interest should be awarded at the prime rate, *First National Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472, 480 (7th Cir. 1999), with appropriate compounding. *EEOC v. Gurnee Inn*, 914 F.2d 815, 819-20 (7th Cir.1990) citing *Gorenstein*, 874 F.2d at 437.

### A.    Lost Wages

Although the adverse job actions against DeMauro occurred over a period of time beginning with his suspension with pay, the most reasonable accrual date for prejudgment interest on his lost wages is the date of DeMauro's removal from the Town payroll on August 1, 1997. Prejudgment interest on his lost wages should be calculated based upon wages lost each month from the time DeMauro was removed from the Town payroll until the entry of judgment, based on the applicable prime rate for each respective year, compounded monthly. Using this methodology, prejudgment

5

interest on DeMauro's lost wages from August 1, 1997 to November 15, 2006 amounts to $66,358.78. *See* attached Affidavit of John DelaGrange at ¶¶ 7-8, and Exhibits 1 and 2 thereto.

**B.    Board Proceedings Attorneys' Fees and Expenses**

A reasonable accrual date for the prejudgment interest on DeMauro's attorneys' fees and expenses arising from the Board Proceedings would be from the date of his first payment in July of 1997. Prejudgment interest on amounts paid then and thereafter is calculated based on the applicable prime rate for each respective year compounded monthly. Using this method, the prejudgment interest on DeMauro's attorneys' fees and expenses amounts to $7,039.15. *See* attached Affidavit of John DelaGrange ¶¶ 9-10, and Exhibits 1 and 3 thereto.

**C.    Mental and Emotional Pain and Suffering**

Prejudgment interest on damages awarded for mental/emotional pain and suffering is calculated from the date of the adverse employment action. *Thomas*, 297 F.3d at 371. DeMauro's emotional pain and suffering due to Defendants' adverse employment actions began with his suspension on May 19, 1997. Prejudgment interest on the $83,1111.29 awarded to DeMauro for his emotional pain and suffering therefore is calculated on that entire amount from that date until the date of the judgment, based on the applicable prime rate for each respective year compounded monthly. Thus, the prejudgment interest on the $83,111.29 awarded to DeMauro for his pain and suffering from the date of his suspension on May 19, 1997 amounts to $74,705.21. *See* attached Affidavit of John DelaGrange at ¶¶ 11-12, and Exhibits 1 and 4 thereto.

WHEREFORE, Plaintiff request that this Court enter an Order altering or amending the judgment in DeMauro's favor by (1) ordering his reinstatement to the Cicero Police Department with full restoration of all seniority and benefits, including vacation time and Town pension contributions;

6

and (2) awarding prejudgment interest on DeMauro's lost wages, attorneys fees' and expenses for the Board proceedings, and on his emotional pain and suffering damages, totaling $148,103.14, thereby raising the total monetary amount of the judgment, as of November 13, 2006, to $398,103.14.

Respectfully submitted,

/s/   <u>Terence J. Moran</u>
One of Plaintiff's attorneys

Terence J. Moran, Esq.
Peter C. McLeod, Esq.
Hughes Socol Piers Resnick & Dym, Ltd.
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
312/580-0100
312/604-2641 fax

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH DEMAURO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98 C 8318 |
| | ) | Judge Gottschall |
| BETTY LOREN-MALTESE; TOWN OF CICERO; | ) | |
| LOUIS GUIDO; MERRICK SCOTT RAYLE; | ) | |
| LEONARD RUTKA; and TOWN OF CICERO | ) | |
| BOARD OF FIRE, POLICE AND PUBLIC SAFETY | ) | |
| COMMISSIONERS, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF JOHN L. DELAGRANGE

John L. DelaGrange, being first duly sworn, states as follows:

1.     I was a practicing Certified Public Accountant from 1965 to 1969.

2.     I have extensive experience in banking and interest calculations. From 1969 to 1982 I worked as a Financial Planning Manager of a Mortgage Banking Subsidiary of First Pennsylvania Bank, in Philadelphia, Pennsylvania. From 1982 to 1987 I worked as the Treasurer, CFO, and President of a Mortgage Banking Subsidiary of Fidelity Bank, in Philadelphia, and from 1988 to 1991 I served as the CEO of a Mortgage Banking Subsidiary of Pathway Financial, in Matteson, Illinois.

3.     I am the Firm Administrator of Hughes, Socol, Piers, Resnick & Dym, Ltd.

4.     At the request of attorney Peter McLeod, I prepared a calculation of prejudgment interest for Plaintiff Joseph DeMauro in the above-captioned case.

5.     Mr. McLeod informed me that the jury awarded Mr. DeMauro $250,000 for compensatory damages, including lost wages through the end of October 2006 amounting to

$157,735.54, attorneys fees and costs incurred by DeMauro during proceedings before the Board of Fire, Police and Public Safety Commissioners of the Town of Cicero amounting to $9,153.17 and on Mr. DeMauro's emotional pain and suffering damages amounting to $83,111.29. Mr. McLeod instructed me to calculate the prejudgment interest Mr. DeMauro would have earned on each of these amounts. Mr. McLeod further instructed me to apply prejudgment interest once per month at the prime rate prevailing on that date to these amounts.

6.　　The Federal Reserve Board publishes on the first day of every month the prime rate prevailing at that time. A copy of those figures is attached as Exhibit 1 to this affidavit.

7.　　With respect to Mr. DeMauro's lost wages, I began with a schedule showing lost wages by year from August 1, 1997 to November 15, 2006. I divided each yearly amount by the number of months covered to arrive at lost wages per month. I then applied the prevailing rate of interest compounded on this monthly amount treated as a series of payments received evenly through each year. This is described as "Current Year" on the attached spreadsheet. I made a second calculation using the prevailing interest rate each year on the cumulative balance of lost wages plus previous year's interest calculations. This is described as "Beg. of Year" on the attached spreadsheet. All calculations were made using TValue 5 software assuming the compounding of interest monthly. Using the above-described data and methodology, I generated a spreadsheet showing the prejudgment interest for Mr. DeMauro. A true and accurate copy of the spreadsheet is attached as Exhibit 2.

8.　　Based upon my calculations, the prejudgment interest on Mr. DeMauro's lost wages amounts to $66,358.78.

9.　　With respect to the attorneys fees and costs, I began with a schedule showing the various attorneys fees and costs incurred by Mr. DeMauro from July of 1997 to January of 1999.

I assumed that payments were made on the last day of the month so that interest began to accrue on the first day of the following month. Interest was calculated on the cumulative balance from the date of each disbursement to the next disbursement date using the prevailing average prime rate. All interest calculations were compounded monthly using TValue 5 software. A copy of the spreadsheet of these interest calculations is attached as Exhibit 3.

10.     Based upon my calculations, the prejudgment interest on Mr. DeMauro's attorneys fees and costs amounts to $7,039.15.

11.     With respect to the emotional pain and suffering damages, I was asked to calculate interest compounded monthly at prevailing average prime rates on a lump sum of $83,111.29 for the period May 19, 1997 to November 15, 2006. This was accomplished by calculating interest for each year on the cumulative balance from the end of the preceding year. All interest calculations were compounded monthly using TValue 5 software. A copy of the spreadsheet of these interest calculations is attached as Exhibit 4.

12.     Based upon my calculations, the prejudgment interest on Mr. DeMauro's emotional pain and suffering amounts to $74,705.21.

John L. DelaGrange

SUBSCRIBED AND SWORN TO
before me this 20th day
of November, 2006.

Notary Public

OFFICIAL SEAL
LIZETTE GONZALEZ
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/26/09